UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN WILDLANDS et al.,

        Plaintiffs,

    v.

NORTON et al.,

        Defendants.

)
)
)
)
)    Civ. No. 05-1043 (EGS)
)
)
)
)
)
)

**FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

TABLE OF CONTENTS

PAGE

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STANDARD AND SCOPE OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.    PLAINTIFFS HAVE FAILED TO JUSTIFY SUPPLEMENTATION OF THE
      ADMINISTRATIVE RECORD WITH THE ALLENDORF AND HITT LETTERS . . . 7

      A.    Plaintiffs' Extra-Record Materials Impermissibly Provide Post Hoc Opinions
            Challenging The Wisdom Of FWS' Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.    Plaintiffs Have Also Failed To Establish That Supplementation Is Appropriate
            In Light Of The Accepted Exceptions To Record Review . . . . . . . . . . . . . . . . . 12

II.   PLAINTIFFS HAVE FAILED TO JUSTIFY SUPPLEMENTATION OF THE
      ADMINISTRATIVE RECORD WITH THE 2004 YELLOWSTONE REPORT . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TABLE OF AUTHORITIES

CASES                                                                    PAGE

Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin., 429 F.3d 1136,
    (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Am. Bioscience, Inc. v. Thompson, 243 F.3d 579 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . 10

Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 6

Am. Wildlands v. Norton, 193 F. Supp. 2d 244 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . 2, 4, 6

Asarco, Inc. v. EPA, 616 F.2d 1153 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Beverly Enters., Inc. v. Herman, 130 F. Supp. 2d 1 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . 10

Camp v. Pitts, 411 U.S. 138 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11, 21

Carlton v. Babbitt, 26 F. Supp. 2d 102 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 15

Carlton v. Babbitt, 900 F. Supp. 526 (D.D.C. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Cen. Ariz. Conservation Dist. v. EPA, 990 F.2d 1531 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . 16

Cheney v. U.S. Dist. Court for Dist. of Columbia, 542 U.S. 367 (2004) . . . . . . . . . . . . . . . . . . 6

Cmty. for Creative Non-Violence v. Lujan, 908 F.2d 992 (D.C. Cir. 1990) . . . . . . . . . . . . . 12, 17

Commercial Drapery Contractors, Inc. v. United States, 133 F.3d 1 (D.C. Cir. 1998) . . . . . . . 12

Common Sense Salmon Recovery v. Evans, 217 F. Supp. 2d 17 (D.D.C. 2002) . . . . . . . . . . . . 11

Cone v. Caldera, 223 F.3d 789 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Corel Corp. v. United States, 165 F. Supp. 2d 12 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . 9, 13

Doe v. Rumsfeld, 341 F. Supp. 2d 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 19

Doraiswamy v. Secretary of Labor, 555 F.2d 832 (D.C. Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . 11

*Envtl. Def. Fund ("EDF") v. Costle, 657 F.2d 275 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . passim

Esch v. Yeutter, 876 F.2d 976 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ethyl Corp. v. EPA, 541 F.2d 1 (D.C. Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Florida Power & Light Co. v. Lorion, 470 U.S. 729 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fund for Animals v. Babbitt, 903 F. Supp. 96 (D.D.C. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fund for Animals v. Williams, 245 F. Supp. 2d 49, 58 (D.D.C. 2003), vacated, Fund for Animals
    v. Hogan, 428 F.3d 1059 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20

Guy v. Glickman, 945 F. Supp. 324 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Huls Am., Inc. v. Browner, 83 F.3d 445 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IMS, P.C. v. Alvarez, 129 F.3d 618 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Cheney, 334 F.3d 1096 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*James Madison, Ltd. v. Ludwig, 82 F.3d 1085 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . 6, 12, 13

Kent County, Delaware Levy Court v. EPA, 963 F.2d 391 (D.C. Cir. 1992) . . . . . . . . . . . 18, 19

Linemaster Switch Corp. v. EPA, 938 F.2d 1299,  (D.C. Cir. 1991) . . . . . . . . . . . . . . 2, 7, 18, 19

Murakami v. United States, 46 Fed. Cl. 731 (Fed. Cl. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Nat'l Wilderness Inst. v. U.S. Army Corps of Eng'rs, 2005 WL 691775, at *10
    (D.D.C. March 23, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13, 16

North Texas Media, Inc. v. FCC, 778 F.2d 28 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . 9

Occidental Eng'g Co. v. INS, 753 F.2d 766 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Oceana, Inc. v. Evans, 384 F. Supp. 2d 203 17 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Peterson Farms I v. Espy, 15 F.3d 1160 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

San Luis Obispo Mothers for Peace v. NRC, 751 F.2d 1287 (D.C. Cir. 1984) . . . . . . . . . . . . . . 5

Sw. Ctr. for Biological Diversity v. Norton, 2002 WL 1733618 at *7
    (D.D.C. July 29, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Counsel, 435 U.S. 519

(1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

<u>Walter O. Boswell Memorial Hospital v. Heckler</u>, 749 F.2d 788 (1984) . . . . . . . . . . . . . . . . . . 8

<u>STATUTES</u>

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5 U.S.C. § 706(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

16 U.S.C. § 1533 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>OTHER AUTHORITIES</u>

Gordon G. Young, Judicial Review of Informal Agency Action on the Fiftieth Anniversary of
the APA: The Alleged Demise and Actual Status Of Overton Park's Requirement of Judicial
Review "On the Record," 10 Admin L.J. Am. U. 179, 228 (1996) . . . . . . . . . . . . . . . . . . . . . . . 10

Stark & Wald, Setting No Records: The Failed Attempts to Limit the Record in Review of
Administrative Action, 36 Admin.L.Rev. 333, 345 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## <u>INTRODUCTION</u>

Plaintiffs, American Wildlands, Bud Lilly, Montana Environmental Information Center, Western Watersheds Project, and Clearwater Biodiversity Project, challenge the United States Fish and Wildlife Service's ("FWS") determination that listing the Westslope Cutthroat Trout (*Oncorhynchus clarki lewisi*) ("WCT") as a threatened species under the Endangered Species Act ("ESA"), 16 U.S.C. § 1533, is not warranted.  <u>See</u> Plaintiffs' Complaint for Declaratory and Injunctive Relief ("Pls' Complaint") at ¶ 2 (Dkt. # 1); <u>see also</u> Reconsidered Finding for an Amended Petition to List the Westslope Cutthroat Trout as Threatened Throughout Its Range, 68 Fed. Reg. 46,989 (Aug. 7, 2003).

On January 9, 2005, Plaintiffs moved to supplement the administrative record with three documents: 1) a letter from Fred W. Allendorf and Paul Spruell to FWS ("Allendorf Letter"); 2) a letter from Nathaniel P. Hitt, Fred W. Allendorf, and Christopher A. Frissell to Lynn R. Kaeding, Chief of the FWS' Branch of Native Fishes Management, Montana Fish and Wildlife Management Assistance Office ("Hitt Letter"); and 3) a Yellowstone Fisheries & Aquatic Sciences 2003 Annual Report ("2004 Yellowstone Report").[1] <u>See</u> Plaintiffs' Motion for Leave to Supplement the Administrative Record ("Pls' Br.") at 2, Exhibits 1-3 (Dkt. # 15).

It is well established, however, that judicial review of agency action is confined to the administrative record before the agency at the time it made the challenged decision.  Although limited exceptions to this general rule exist, Plaintiffs have failed to carry their burden of demonstrating that an established exception justifies supplementation here.

The Supreme Court and the D.C. Circuit have expressly rejected supplementation with extra-record materials which challenge the wisdom of an agency decision, such as the Allendorf and Hitt

---

[1] Plaintiffs' reference to the Annual Report as the "2003 Annual Report" is misleading, as it suggests that the report was issued in 2003. Pls' Br. at 11. However, the report was issued in 2004 and discusses matters which occurred in 2003.  <u>See</u> 2004 Yellowstone Report at 1 (document number, "YCR-NR-2004-03" indicates the report was released in 2004) (attached as Exhibit A); <u>id.</u> at 2 (the "suggested citation" to the document indicates that the report was issued in 2004).

letters. See Envtl. Def. Fund ("EDF") v. Castle, 657 F.2d 275, 285 (D.C. Cir. 1981) ("Consideration of [extra-record] evidence to determine the correctness or wisdom of the agency's decision is not permitted. . . ."). See Section I, *supra*. Moreover, the D.C. Circuit has clearly rejected supplementation with post-decisional materials that were neither before nor considered by the agency in making the challenged determination, such as the 2004 Yellowstone Report. See Linemaster Switch Corp. v. EPA, 938 F.2d 1299, 1305 (D.C. Cir. 1991) ("[R]eviewing courts should take into account 'neither more nor less information than did the agency when it made its decision.'" (citations omitted)). See Section II, *supra*.

Accordingly, due to the well established law on this issue, Plaintiffs' motion fails, and this Court should reject Plaintiffs' invitation to venture beyond the confines of the record when reviewing FWS' reconsidered listing determination. Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Counsel, 435 U.S. 519, 549 (1978) (as long as there is a contemporaneous explanation, the agency decision must "stand or fall on the propriety of that finding."). If the Court nonetheless decides to consider this post-decisional material, FWS respectfully requests the opportunity to submit rebuttal materials which directly address and refute the post hoc opinions and statements contained in Plaintiffs' extra-record materials.

## PROCEDURAL BACKGROUND[2]

On August 7, 2003, FWS issued a reconsidered listing determination, in accordance with this Court's March 31, 2002 Order. See Am. Wildlands v. Norton, 193 F. Supp. 2d 244, 249-50 (D.D.C. 2002) (discussing the relevant procedural background leading to Plaintiffs' initial lawsuit). In the prior

_____

[2] In their motion to supplement the administrative record, Plaintiffs have provided a "factual background" section and have delved into the merits of this case. Defendants, however, do not provide a "factual background" section or attempt to argue the merits of this case, as any such argument is premature and not relevant to the instant motion before the Court. Rather, this dispute focuses squarely on determining, as a matter of law, what information the Court should consider when reviewing FWS' reconsidered listing determination – not whether the decision itself should be upheld.

lawsuit challenging FWS' first listing determination for the WCT, 65 Fed. Reg. 20,120 (April 14, 2000), this Court determined that "FWS [did] not offer a scientifically based explanation for its decision to include known hybridized fish in its assessment of the WCT's current distribution" and that FWS "fail[ed] to reconcile its recognition of hybridization as a threat to WCT's viability with its inclusion of hybrid stock in the population assessed for listing." Id. at 254-255. This Court remanded the finding to FWS, stating:

> FWS must evaluate the threat of hybridization as it bears on the ESA's statutory listing factors. Specifically, FWS must determine: (1) the current distribution of the species, taking into account the prevalence of hybridization, . . .; (2) whether the WCT population is an endangered or threatened species because of hybridization, . . .; and (3) if existing regulatory mechanisms are adequate to address threats posed by hybridizing non-native fish.

Id. at 258.

Following the Court's opinion and order, FWS initiated "a new status review for the WCT and solicited comments from all interested parties regarding the present-day status of this fish." 68 Fed. Reg. at 46,991; see also 67 Fed. Reg. 56,257 (Sept. 3, 2002). Specifically, FWS stated it was "particularly interested in receiving data, information, technical critiques, and relevant comments that will help us address" the questions posed by the Court, including information pertaining to "the extent to which it is appropriate to include hybrid WCT stocks and stocks of unknown genetic characteristics in the WCT population considered for listing." 67 Fed. Reg. 56,258-59. Due to requests from various states and entities, such as the States of Washington, Oregon, Idaho, Montana, as well as the Kalispel Tribe of Indians and the Earthjustice Legal Foundation, FWS reopened the comment period until February 15, 2003, to allow those interested parties to assemble and submit "important information relevant to the status of WCT." 68 Fed. Reg. at 46,991.

FWS received numerous comments and information from various state and federal agencies, private citizens, and organizations. Among the information received was "a status update report for WCT, a comprehensive document (Shephard et al. 2003) prepared by the fish and wildlife agencies of

the States of Idaho, Montana, Oregon and Washington, and the U.S. Forest Service." Id. at 46,996.

Notably,

> The WCT status update report (Shephard et al. 2003) and the comprehensive database that is the report's basis, presented to us the best scientific and commercial information available that describes the present-day rangewide status of WCT in the United States. To compile that information, 112 professional fishery biologists from 12 State, Federal, and Tribal agencies and private firms met at 9 workshops held across the range of WCT in fall 2002. Those fishery biologists had a combined 1,818 years of professional experience, 63 percent of which involved work with WCT or other subspecies of cutthroat trout. At the workshops, the biologists submitted essential information on the WCT in their particular geographic areas of professional responsibility or expertise, according to standardized protocols. Presentation of information directly applicable to addressing the issues raised by the Court, as well as other concerns that we consider when making listing determinations under the [ESA], was central to those protocols.

Id.

"After a thorough review of all available scientific and commercial information," including

information and comments submitted by various interested parties and the comprehensive status update

report for WCT, FWS determined on August 7, 2003, that "listing the WCT as either threatened or

endangered is not warranted at this time." Id. at 46,989. Included in the determination is FWS'

"scientifically-based conclusion about the extent to which it is appropriate to include 'hybrid' WCT

populations and populations of unknown genetic characteristics in the taxonomic group that [FWS]

considered for listing." Id. On May 23, 2005, Plaintiffs filed the instant suit challenging the adequacy

of FWS' reconsidered finding for the WCT. See Complaint at ¶¶ 41-43.

## STANDARD AND SCOPE OF REVIEW

Agency decisions made under the ESA are reviewed under the Administrative Procedure Act's

standard and scope of review, 5 U.S.C. § 706, ("APA"). Am. Wildlands, 193 F. Supp. 2d at 251 (citing

City of Las Vegas v. Lujan, 891 F.2d 927, 932 (D.C. Cir. 1989)). The Supreme Court has emphasized

repeatedly the strict limitations the APA imposes on judicial review:

> We have made it abundantly clear before that when there is a contemporaneous explanation of the agency decision, the validity of that action must "stand or fall on the propriety of that finding, judged, of course, by the appropriate standard of review. If

that finding is not sustainable on the administrative record made, then the [agency] decision must be vacated and the matter remanded to [the agency] for further consideration." <u>Camp v. Pitts</u>, 411 U.S. 138, 143 . . . (1973).

<u>Vermont Yankee</u>, 435 U.S. at 549. The standard of review under the APA is "highly deferential," and "presumes agency action to be valid." <u>Ethyl Corp. v. EPA</u>, 541 F.2d 1, 34 (D.C. Cir. 1976) (citing <u>Citizens to Preserve Overton Park v. Volpe</u>, 401 U.S. 402, 415 (1971)); <u>Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.</u>, 429 F.3d 1136, 1144 (D.C. Cir. 2005) ("A party challenging an agency's rulemaking has the burden of showing that the agency action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 5 U.S.C. § 706(2)(A)).

The APA limits judicial review of agency action to the administrative record. <u>Vermont Yankee</u>, 435 U.S. at 549. The Supreme Court and D.C. Circuit have emphasized that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." <u>Camp v. Pitts</u>, 411 U.S. at 142. <u>See</u> <u>Florida Power & Light Co. v. Lorion</u>, 470 U.S. 729, 743-44 (1985); <u>Edison Elec. Inst. v.OSHA</u>, 849 F.2d 611, 617-18 (D.C. Cir.1988); <u>EDF v. Costle</u>, 657 F.2d at 284.

The practice of supplementing the record for judicial review is the exception rather than the rule. <u>See</u> <u>San Luis Obispo Mothers for Peace v. NRC</u>, 751 F.2d 1287, 1324 (D.C. Cir. 1984), <u>aff'd in relevant part and vacated in part</u>, 760 F.2d 1320 (D.C. Cir. 1985), <u>aff'd</u>, 789 F.2d 26 (D.C. Cir.) (en banc). For instance, Plaintiff is not entitled to rely upon extra-record declarations and other documents simply because record review cases are resolved by summary judgment. Rather, in such a proceeding the district court

is not required to resolve any facts in a review of an administrative proceeding. Certainly, there may be issues of fact before the administrative agency. However, the function of the district court is to determine whether or not as a matter of law the evidence <u>in the administrative record</u> permitted the agency to make the decision it did.

<u>Occidental Eng'g Co. v. INS</u>, 753 F.2d 766, 769 (9th Cir. 1985) (emphasis added). <u>See also</u> <u>Am.</u>

Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001) ("As we have repeatedly recognized, however, when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal." (footnote omitted)).

Moreover, supplementation is not permitted simply as a means for plaintiffs to question the wisdom or correctness of an agency's decision. See EDF v. Costle, 657 F.2d at 285. This is so because "[t]he court is not empowered to substitute its judgment for that of the agency." Overton Park v. Volpe, 401 U.S. at 416. Indeed, this Court is to "give an extreme degree of deference to the agency when it 'is evaluating scientific data within its technical expertise.'" Huls Am., Inc. v. Browner, 83 F.3d 445, 452 (D.C. Cir. 1996) (quoting Int'l Fabricare Inst. v. EPA, 972 F.2d 384, 389 (D.C. Cir. 1992)).

There are, however, limited circumstances in which a reviewing court may consider supplementation. D.C. Circuit law holds that a party desiring to supplement the record must demonstrate one of the applicable factors: (1) it appears that the agency has deliberately or negligently excluded documents adverse to its decision; (2) supplementation of the record provides essential background information necessary to determine whether the agency considered all relevant factors; (3) the agency has failed to explain its administrative action so as to frustrate effective judicial review; and (4) it appears that the agency acted in bad faith. James Madison, Ltd. v. Ludwig, 82 F.3d 1085, 1095 (D.C. Cir. 1996); Nat'l Wilderness Inst. v. U.S. Army Corps of Eng'rs, Civ. No 010273 (TFH), 2005 WL 691775, at *10 (D.D.C. March 23, 2005); In re Cheney, 334 F.3d 1096, 1103 (D.C. Cir. 2003), vacated on other grounds, Cheney v. U.S. Dist. Court for Dist. of Columbia, 542 U.S. 367 (2004).

## ARGUMENT

FWS' administrative record in this case is quite extensive and complete, containing over 770 documents and consisting of over 18,000 pages of comments received by various interested parties, scientific reports and papers, agency research and analysis, and peer review correspondence. See Notice of Filing Administrative Record (Dkt. #14). FWS made the challenged decision after a lengthy

administrative process, including extensive participation by various States, federal agencies, public and private organizations, and numerous individuals.  See 68 Fed. Reg. at 46,991, 46,996.  The comments and information provided by all interested parties, as well as the information and materials in FWS' own files, are found in the administrative record and provided the platform upon which FWS' issued its reconsidered determination.

Notwithstanding the extensive record, and while acknowledging the record review limitations applicable to judicial review, Plaintiffs now seek to depart from the well established principle limiting review to the record and seek to provide evidence precisely to undermine and question the wisdom of FWS' decision.  Plaintiffs request should be rejected.  The Allendorf and Hitt letters impermissibly provide post hoc views challenging the wisdom of FWS' reconsidered finding, see EDF v. Costle, 657 F.2d at 285 ("Consideration of [extra-record] evidence to determine the correctness or wisdom of the agency's decision is not permitted. . . .").  The 2004 Yellowstone Report was issued after FWS' determination and thus was neither "before the agency" nor considered by the agency in making its decision, Linemaster Switch Corp. v. EPA, 938 F.2d 1299, 1305 (D.C. Cir. 1991) ("[R]eviewing courts should take into account 'neither more nor less information than did the agency when it made its decision.'" (citations omitted)).

## I.      PLAINTIFFS HAVE FAILED TO JUSTIFY SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD WITH THE ALLENDORF AND HITT LETTERS.

### A.      Plaintiffs' Extra-Record Materials Impermissibly Provide Post Hoc Opinions Challenging The Wisdom Of FWS' Decision.

As stated above, Plaintiffs seek to supplement the administrative record with the Allendorf and Hitt letters, both of which were provided to FWS well after the issuance of its reconsidered listing determination.  See Pls' Br. at 2, Exhibit 1, 2.  Plaintiffs note the letters "reflect the understanding of scientists" who have criticized and objected to FWS' final listing determination for the WCT and thus provide the "understanding," "interpretation," "disagreement," "views," "comments," and "criticisms"

of various individuals.  See Pls' Br. at 1-11.

Plaintiffs attempt to characterize the Allendorf and Hitt letters as containing information showing that FWS "misused" and "misinterpreted" the authors' scientific work, implying that FWS acted inappropriately by skewing data or analysis or otherwise misrepresenting data.  Pls' Br. at 9 (claiming that FWS' "misrepresent[ed] the underlying science").  Nowhere, however, do Plaintiffs, nor the individuals in their respective letters, point to a single instance where FWS misrepresented, hid, concealed, or otherwise manipulated data.  Rather, the letters merely offer the opinions and conclusions of various individuals who believe that a different conclusion or interpretation is correct, based on the exact same materials FWS itself considered and reviewed.

Accordingly, it is clear that the Allendorf and Hitt letters provide post hoc opinions and criticisms of FWS' determination.  See Pls' Br., Exhibit 1 at 1-3 (characterizing provisions of the listing determination and then offering opinions based on those characterizations); Pls' Br., Exhibit 2 at 1-3 (same).[3]  Even Plaintiffs effectively concede as much.  See Pls' Br. at 6 (noting that the authors do not agree with FWS' "conclusions" and "findings"); id. at 8 (the letters provide the "views" of various individuals); id. at 11 (the letters contain "criticisms" of the final listing determination).

The D.C. Circuit has made clear on numerous occasions that a Court is not to review extra-record materials that challenge correctness or wisdom of agency decision, such as the Allendorf and Hitt letters.  EDF v. Costle, 657 F.2d at 285.  For instance, in Walter O. Boswell Memorial Hospital v. Heckler, 749 F.2d 788, 794 (1984), the D.C. Circuit held that information not available at the time of an agency decision cannot be introduced into the administrative record in a case contesting that

---

[3] Notably, one of the primary reasons not to consider Plaintiffs' post hoc rationalizations is that the opinions contained in the letters are premised on mis-characterizations and unsupported interpretations of the final listing determination.  Compare Pls' Br., Exhibit 1 at 2 (Allendorf Letter, stating that FWS would consider WCT with less than 50 percent WCT genes as a member of the subspecies considered for listing) with 68 Fed. Reg. at 46,994-95 (noting that when molecular genetic data are available, WCT with less than 80 percent WCT genes will not generally be considered part of the WCT subspecies considered for listing under the ESA).

decision.  Id. at 792 ("To review more than the information before the Secretary at the time she made her decision risks our requiring administrators to be prescient or allowing them to take advantage of post hoc rationalizations.").  In another analogous case, the court stated:

> As this Court has noted in the past, "consideration of outside evidence 'to determine the correctness or wisdom of the agency's decision is not permitted.'" . . . . Because Dr. DeRamus's declarations are offered primarily to attack the propriety of the challenged agency action, they will be stricken.

Corel Corp. v. United States, 165 F. Supp. 2d 12, 31-32 (D.D.C. 2001) (striking expert affidavit that purported to assess the technical and final merits of a decision of the Department of Labor).  See also Cone v. Caldera, 223 F.3d 789, 795 (D.C. Cir. 2000) (refusing to consider post decisional affidavits in record review case); IMS, P.C. v. Alvarez, 129 F.3d 618 (D.C. Cir. 1997) (same); North Texas Media, Inc. v. FCC, 778 F.2d 28, 33 n. 16 (D.C. Cir. 1985) (same).

Plaintiffs nevertheless argue that consideration of post-decisional evidence which relates to whether the challenged decision was "correct or not" is permissible in record review cases.  Pls' Br. at 5, 6-9 (arguing that the Court should consider the "critical letters").  Plaintiffs are referring to the fifth factor stated in Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989), where the court merely quotes two scholars' compilation of reasons why some federal circuits have supplemented an administrative record:

> As recently summarized by two commentators, exceptions to the general rule have been recognized (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

Esch, 876 F.2d at 991, citing Stark & Wald, Setting No Records: The Failed Attempts to Limit the Record in Review of Administrative Action, 36 Admin.L.Rev. 333, 345 (1984).

However, the fifth factor identified in Esch "has infrequently been applied[,] is of dubious

extraction[,]" and does not justify consideration of extra-record material in the D.C. Circuit.  See Murakami v. United States, 46 Fed. Cl. 731, 736 (Fed. Cl. 2000) (referring to the fifth factor as the "new evidence" exception).  Notably, Esch's fifth factor has never been adopted or applied by the D.C. Circuit and courts in this Circuit, including an unpublished opinion by the D.C. Circuit, declared the eight factors in Esch to be *dicta* and of limited probative value.  Beverly Enters., Inc. v. Herman, 130 F. Supp. 2d 1, 8 n. 2 (D.D.C. 2000) (applying the eight exceptions generally was "dicta" in Esch), citing Peterson Farms I v. Espy, 1994 WL 26331, at *3, 15 F.3d 1160 (D.C. Cir. 1994) ("the probative value of such dicta is limited"); see also Sw. Ctr. for Biological Diversity v. Norton, Civ. No. 98-934 (RMU/JMF), 2002 WL 1733618 at *7 (D.D.C. July 29, 2002) (noting *dicta* in Esch); Oceana, Inc. v. Evans, 384 F. Supp. 2d 203, 218 n. 17 (D.D.C. 2005) (same), clarified on other grounds, 289 F. Supp. 2d 4 (D.D.C. 2005).

The fifth factor identified in Esch is of dubious extraction precisely because it directly conflicts with the fundamental principles governing judicial review of administrative action – that review is not to be based on subsequent events or rationales after the fact.  Overton Park, 401 U.S. at 416 ("The court is not empowered to substitute its judgment for that of the agency.").  As one author correctly noted, "[t]his alleged exception is so flatly at odds with Overton Park that, if it exists, it renders the On the Record Rule meaningless."  Gordon G. Young, Judicial Review of Informal Agency Action on the Fiftieth Anniversary of the APA: The Alleged Demise and Actual Status Of Overton Park's Requirement of Judicial Review "On the Record," 10 Admin L.J. Am. U. 179, 228 (1996), cited with approval in Am. Bioscience, Inc. v. Thompson, 243 F.3d 579, 582-83 (D.C. Cir. 2001).  Accordingly, Plaintiffs' reliance on the "exception" which permits review of post-decisional materials discussing whether the agency's decision was "correct or not" fails.

Nor do the cases which Plaintiffs rely upon – Oceana, Inc. v. Evans, 384 F. Supp. 2d 203 (D.D.C. 2005), Carlton v. Babbitt, 26 F. Supp. 2d 102 (D.D.C. 1998), and Southwest Center for

-10-

Biological Diversity v. Norton, 2002 WL 1733618 (D.D.C. 2002) – support Plaintiffs' claims that the Court should supplement the record with post hoc rationalizations to determine whether FWS made the correct decision.  In Oceana, 384 F. Supp. 2d 219-220, the court cited three reasons, including the "new evidence" exception, for deciding to consider a declaration written by a scientist who helped develop a model that the agency itself used.  Id. at 218 n. 17.  Despite improperly citing the fatally flawed fifth factor in Esch, the court carefully limited its use of the declaration to understanding the "model's complexities" and determining whether the agency considered all factors.  Id. at 219-220.  The court clearly did not consider the declarations to determine whether the agency made the "correct" determination.  Id.

Likewise, in Southwest Center for Biological Diversity v. Norton, the court candidly admitted that "it would be difficult to pretend that Lande's declaration does not exist," but then carefully restricted review of the declaration to determine whether the agency considered all relevant factors.  2002 WL 1733618, at * 7-8.  Again, the court refused to use the declaration to determine whether the agency made the "correct" decision: "[T]his court is hardly in the position to second-guess [the experts who made the disputed determinations]. . ." Id. at *8.

Finally, in Carlton v. Babbitt, 26 F. Supp. 2d at 111, the court did permit introduction of a declaration which "disclaimed the optimistic reading given to his work by the FWS," as Plaintiffs' stated in their motion.  See Pls' Br. at 8.  Yet what Plaintiffs in this case fail to mention is that the declaration was in fact before the agency at the time it made the decision: "At the time [FWS] presented [its] finding, however, the FWS had before it a declaration submitted by Dr. Shaffer in Fund for Animals v. Babbitt, 903 F. Supp. 96 (D.D.C. 1995), in which Dr. Shaffer disclaimed the optimistic reading given to his work by the FWS."  Id. at 111; accord Common Sense Salmon Recovery v. Evans, 217 F. Supp. 2d 17, 20 (D.D.C. 2002) (noting that a court "may not entertain post hoc rationalizations where no rationale was set forth before").  Accordingly, neither Carlton, Oceana, or Southwest Center

supports Plaintiffs' assertion that this Court should consider extra-record materials which provide post hoc rationalizations challenging the wisdom of the agency's decision.

Rather, this Circuit in <u>EDF v. Costle</u>, 657 F.2d 275, has soundly rejected precisely what Plaintiffs attempt here:

> EDF advocates the creation of an exception which would enable challenging parties to submit affidavits addressing the merits and propriety of the agency decision. The creation of such an exception would be contrary to decisions of the Supreme Court and of this court. There is no occasion for a judicial probe beyond the confines of a record which affords enough explanation to indicate whether the agency considered all relevant factors. <u>Asarco, Inc. v. EPA</u>, 616 F.2d 1153, 1160 (9th Cir. 1980); <u>Doraiswamy v. Secretary of Labor</u>, 555 F.2d 832, 842-43 (D.C. Cir. 1976). If anything, a judicial venture outside the record can only serve either as background information, or to determine the presence of the requisite fullness of the reasons given; and it can never, under <u>Camp v. Pitts</u>, 411 U.S. 138 (1973), examine the propriety of the decision itself.

<u>Id</u>. at 286; <u>Guy v. Glickman</u>, 945 F. Supp. 324, 329 (D.D.C. 1996) (consideration of new evidence to determine the correctness or wisdom of an agency's decision is not permitted, even when the court also examined the record.). Accordingly, the Court should deny Plaintiffs' motion to supplement the record with the Allendorf and Hitt letters

### B.    Plaintiffs Have Also Failed To Establish That Supplementation Is Appropriate In Light Of The Accepted Exceptions To Record Review.

Even assuming for the sake of argument that Plaintiffs' extra-record materials do not offer post hoc rationalizations, Plaintiffs' motion should still be denied due to their failure to "make a strong showing that the exception applies." <u>Fund for Animals v. Williams</u>, 245 F. Supp. 2d 49, 58 (D.D.C. 2003) (citing <u>Overton Park</u>, 401 U.S. at 420), vacated, <u>Fund for Animals v. Hogan</u>, 428 F.3d 1059 (D.C. Cir. 2005); <u>Commercial Drapery Contractors, Inc. v. United States</u>, 133 F.3d 1, 7 (D.C. Cir. 1998); <u>Cmty. for Creative Non-Violence v. Lujan</u>, 908 F.2d 992, 997 (D.C. Cir. 1990).

With respect to the Allendorf and Hitt letters, Plaintiffs do not argue that FWS deliberately or negligently excluded these documents, that FWS failed to explain its decision so as to frustrate judicial review, or that FWS has somehow acted in bad faith. <u>See</u> <u>James Madison, Ltd. v. Ludwig</u>, 82 F.3d

1085, 1095 (D.C. Cir. 1996). Rather, Plaintiffs rely exclusively on the exception which permits "supplement[ation of] the record with 'background information' in order to determine whether the agency considered all of the relevant factors." Id.; Pls' Br. at 9. As demonstrated below, Plaintiffs' reliance on this exception is misplaced.

First, case law very clearly limits the Court's ability to go beyond the agency record to those circumstances where it has first determined that the agency record is so inadequate as to frustrate judicial review. EDF v. Costle, 657 F.2d at 285. Plaintiffs do not mention the current state of the administrative record or attempt to explain how or why the record is inadequate so as to frustrate judicial review.[4] Thus, at the outset, Plaintiffs fail to "make a strong showing" that, due to the inadequacy of the record, an exception applies.

Second, the exception permits supplementation only with "background information," which is then used to determine whether the agency considered all relevant factors. James Madison, Ltd., 82 F.3d at 1095; Nat'l Wilderness Inst., 2005 WL 691775, at *11. The exception does not contemplate supplementation with post hoc rationalizations or opinion testimony by Plaintiffs. EDF v. Costle, 657 F.2d at 285-86 (rejecting plaintiffs' attempts to offer four affidavits submitted by affiants who were not employees of the agency that made the decision under review).

Third, and more to the point, the record clearly discloses that FWS considered all relevant

---

[4] Plaintiffs apparently do not discuss the adequacy of the record because, as demonstrated below, the record contains the papers, articles, and comments of the individuals whose views are expressed in the Allendorf and Hitt letters and the record demonstrates that FWS discussed each and every "factor" or "issue" addressed in the letters. The record is thus more than adequate for judicial review and, given Plaintiffs' numerous submissions of comments during the remand process, Plaintiffs should be able to argue, if it were truly the case, that FWS failed to consider all relevant factors. See, e.g., Doe v. Rumsfeld, 341 F. Supp. 2d 1, 12-13 (D.D.C. 2004) ("Notice and comment also ensures fairness to all parties and provides a well-developed record. . . ."), modified on other grounds, No. Civ. A 03-707 (EGS), 2005 WL 774857 (Feb. 6, 2005) and 2005 WL 1124589 (D.D.C. Apr. 6, 2005). That Plaintiffs seek to supplement the record when the record is comprehensive highlights the true motives in submitting the extra-record materials – i.e., to have the court "consider[] . . . outside evidence 'to determine the correctness or wisdom of the agency's decision,'" which "is not permitted." Corel Corp., 165 F. Supp. 2d at 31-32 (citations omitted).

factors in its reconsidered finding. Plaintiffs first assert that "FWS never considered . . . the consequences of hybridization" and that FWS did not consider the "implication[s]" contained in a thesis authored by Nathaniel Hitt, i.e., that hybridized WCT do not behave like WCT. Pls' Br. at 9-10. Even a cursory examination of FWS' listing determination demonstrates otherwise. For example, FWS expressly considered the state of available information regarding the effects of hybridization on WCT:

> [W]e are not aware of any information to suggest that [WCT with low levels of genes from another taxon] express behavioral, ecological, or life-history characteristics differently than do WCT native to the particular geographic area. Without such changes, we except the frequency of genes from the other taxon to remain low in the population. Therefore, we do not consider such populations as contributing to the threat of hybridization to the WCT subspecies.

68 Fed. Reg. 46,989, 46,994 (Aug. 7, 2003); id. at 46,992 ("introgressed [or hybridized] populations may contain unique or appreciable portions of the genetic resources of an imperiled or listed species. For example, populations with genes from another taxon at very low frequencies may still express important behavioral, life-history, or ecological adaptations of the indigenous population or species within a particular geographic area."); id. at 47,004 ("Continual introgression can eventually lead to the loss of genetic identity of one or both parent species, thus resulting in a "hybrid swarm" consisting entirely of individual fish that each contain genetic material from both of the parental species."); id. at 47,005 (discussing the effects on fitness and other consequences of hybridization for WCT); id. at 46,991 (discussing general effects of hybridization).

Moreover, FWS contracted directly with Dr. Allendorf and his genetics laboratory to gather scientific information about the effects of introgressive hybridization on WCT fitness. AR II-240; AR II-247.[5] The resultant reports and peer review comments, all in the administrative record, thoroughly

---

[5] The administrative record in this case consists of two parts: the first part ("Part I", located on the first CD-ROM and containing its own index) is the administrative record for FWS' initial listing determination; and the second part ("Part II", located on the second and third CD-ROMs and containing its own index) consists of the additional documents and materials reviewed following remand of FWS' initial listing determination. For ease of reference, the citations to the administrative record herein will identify the relevant "Part" of the record (i.e., Part I or Part II), the document number, and the bates stamp number. For example, "AR I-112 at 1112" references Part I of the record, document number

discuss the effects of hybridization of WCT fitness.  AR II-242-246; AR II-249-252; AR II-253 at

6811.  FWS also considered the 2002 Hitt thesis and comments submitted by Nathaniel Hitt for

available information on the effects of hybridization on WCT.  See 68 Fed. Reg. at 47,004 (discussing

the conclusions reached by Hitt in his 2002 thesis).  See also AR II-92 (2002 Hitt thesis); AR II-91

(comments submitted by Nathaniel Hitt); AR II-151 (same).

As the above citations to the record demonstrate, FWS clearly did consider the "consequences

of hybridization," including material provided by Nathaniel Hitt and Dr. Allendorf.  The record clearly

reflects that FWS considered these factors and that Plaintiffs seek to supplement the record with post-

decisional commentary on the exact same materials FWS itself considered and reviewed – an

insufficient basis to supplement the record.  See Carlton v. Babbitt, 26 F. Supp. 2d at 107-108 (refusing

to consider or supplement the record with extra-record materials when FWS considered the relevant

"issue" or "factor").

Plaintiffs next cursorily argue that "FWS never addressed th[e] significant implication of the

Hitt (2002) research, i.e., that hybridization cannot be expected to remain at low levels."  Pls' Br. at

10.  Plaintiffs' contention is once again belied by the record – FWS clearly considered the "issue" or

"factor" of whether hybridization can be expected to remain at low levels:

> Because self-sustaining populations of nonnative fishes pose the greatest hybridization threat
> to WCT and few of those populations can be eliminated or appreciably reduced, a key concern
> is for the extent that introgressive hybridization may eventually pervade extant, nonintrogressed
> or suspected nonintrogresssed WCT populations, particularly those that inhabit headwater
> streams in high elevation areas.  Hitt (2002) reported that 55 percent of 40 WCT populations
> examined in the Flathead River drainage in Montana showed evidence of introgressive
> hybridization with rainbow trout, and that introgression had progressed upstream in several
> tributaries during the past 2 decades.  Additional evidence suggested that the upstream
> introgression of rainbow trout genes would eventually be halted by diminished stream size, as
> evidenced by the observation that rainbow trout usually inhabit larger streams than cutthroat
> trout.  However, Hitt (2002) further speculated that the stream reaches upstream from those
> potentially limiting locations would be too small to support viable WCT populations.

---

112, and bates stamp number 1112.

68 Fed. Reg. at 47,004.  Following this discussion in the determination, FWS  proceeds to describe

environmental conditions that may limit the upstream spread of foreign genes. Id. at 47,004-05.

Moreover, FWS considered many scientific articles discussing the apparent environmental barriers to

the movement of foreign genes in the WCT subspecies.  See AR II-325 (Weigel et al. 2003); AR II-267

(Behnke 1992); AR II-268 (Behnke 2002); AR II-239 (Dr. Behnke's peer review of FWS' "hybrids"

section); AR I-225 (Magee et al. 1996).

As particularly relevant to this inquiry, FWS expressly acknowledged the "implication" that

Plaintiffs now argue FWS failed to consider:

> The available empirical evidence and speculations by many fishery scientists indicate that
> rainbow trout genes are expected to continue moving upstream into many stream reaches
> presently inhabited by nonintrogressed WCT, although, as we have discussed, there may be
> limits to that upstream dispersal set by low stream temperatures or other factors.

68 Fed. Reg. at 47,005 (emphasis added); compare with Pls' Br. at 10 (arguing that "hybridization

cannot be expected to remain at low levels").   Accordingly, it cannot be said that FWS failed to

consider this "factor" or "issue."  See Nat'l Wilderness Inst. v. U.S. Army Corps of Eng'rs, 2005 WL

691775, at *11 (refusing to supplement the record when the agency considered the "data" contained

in the extra-record materials).

In sum, the record conclusively demonstrates that FWS considered all relevant factors.

Plaintiffs' arguments to the contrary confuse the distinction between offering a document to genuinely

show that relevant factors were not considered from those instances where the ultimate purpose of

offering the document is to contend that the agency erred in its consideration of those factors.

Plaintiffs' attempt to supplement the record here is clearly for the latter reason, rather than the former,

and thus should be rejected.  EDF v. Costle, 657 F.2d at 286 ("There is no occasion for a judicial probe

beyond the confines of a record which affords enough explanation to indicate whether the agency

considered all relevant factors. . . ); Cen. Ariz. Conservation Dist. v. EPA, 990 F.2d 1531, 1543 (9th

Cir. 1993) ("Petitioners' essential argument does not claim that EPA failed to consider the relevant

factors, but instead contends that EPA erred in its consideration of those factors.").

## II.  PLAINTIFFS HAVE FAILED TO JUSTIFY SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD WITH THE 2004 YELLOWSTONE REPORT.

As stated above, it is well settled that the administrative record is required to contain only the information that was before the deicsionmaker at the time the listing decision was made.  See Cmty. for Creative Non-Violence, 908 F.2d at 998 ("[J]udicial review of administrative action should normally be based on the 'full administrative record' that was before a decisionmaker at the time challenged action was taken . . . ." (citation omitted)).  Again disregarding controlling D.C. Circuit law, Plaintiffs seek to supplement the record with the 2004 Yellowstone Report, a document which was issued after FWS' reconsidered listing determination.[9]  Plaintiffs' attempts to justify supplementation fail.

First, the document is post-decisional.  The report was issued in 2004, well after FWS made its reconsidered listing determination.  See Exhibit A at 1, 2 (both the document number and the suggested citation indicate the document was issued in 2004).  Recognizing that the report is post-decisional, Plaintiffs instead argue that a laboratory completed genetic tests prior to the issuance of FWS' determination and that FWS was somehow remiss in not obtaining and considering the laboratory results.  Pls' Br. at 12 (accusing FWS of being negligent for not discovering laboratory results prepared for another federal agency).

However, that a laboratory completed genetic testing for NPS a few months prior to FWS' reconsidered decision is simply a non-issue – Plaintiffs seek to introduce NPS's post-decisional commentary, not the laboratory results which form the basis of the report.  Carlton v. Babbitt, 900 F.

_____

[9] The 2004 Yellowstone Report is not a peer-reviewed, scientific article, but rather contains the "preliminary analysis" of the National Park Service ("NPS") and expressly recognizes that further testing and analyses is necessary to form any definitive conclusions. Pls' Br., Exhibit 3 at 3 (noting that the report is based on "[p]reliminary analyses" and that further collection and analyses is needed to "not only detail the amount of recent hybridization in the population, but also [to] provide an accurate account of the spatial distribution of the hybridized (and remaining pure) cutthroat trout").

Supp. 526, 532 n. 5 (D.D.C. 1995) ("The Court agrees that the 1993 information came to light after the FWS had made its 12-Month Administrative finding and should not be considered."). Thus, it is clear that the report was not before the agency, was not considered by the agency, and thus is not properly part of the administrative record for FWS' reconsidered listing determination. Linemaster Switch Corp. v. EPA, 938 F.2d 1299, 1305 (D.C. Cir. 1991) ("[R]eviewing courts should take into account 'neither more nor less information than did the agency when it made its decision.'" (citations omitted)).

Moreover, and contrary to Plaintiffs' arguments, FWS is simply not obligated, nor can it be found "negligent," for failing to comb the laboratories used by other federal agencies to determine whether the laboratories have just completed any genetic testing for another federal agency. The D.C. Circuit has addressed and spoken to this issue in two analogous cases – Linemaster Switch Corp. v. EPA, 938 F.2d 1299, 1305 (D.C. Cir. 1991), and Kent County, Delaware Levy Court v. EPA, 963 F.2d 391 (D.C. Cir. 1992). In Linemaster Switch, the court considered whether to supplement the record with data that was submitted by plaintiffs to an EPA regional office, but was not considered by EPA in reaching the challenged decision in that case. In rejecting supplementation with the data, the Court noted that, even though plaintiffs submitted the data to EPA, they did not submit the data to the division of the EPA responsible for making the challenged decision. 938 F.2d at 1306. The court thus refused to "require EPA to comb all regional files for potentially relevant data before [making its determination]." Id. at 1306.

In an opinion issued one year later, the D.C. Circuit permitted supplementation of the record with various documents not considered by EPA but contained in EPA's files, finding that "EPA was at least negligent in failing to discover [certain files] when it searched for documents to support its position . . ." Kent County, 963 F.2d at 293. The Court explained that "EPA itself looked outside its national CERCLA files and relied on a single memorandum from another program," yet failed "to examine the Region III CERCLA files for documents discussing [the relevant issue] before relying on

-18-

the single [] memorandum.  This is true particularly in a case like this one where the EPA's policy regarding [the relevant issue] varies region to region."  Id. at 396.

Both cases easily refute Plaintiffs' assertion that FWS was somehow "negligent" in failing to find and consider laboratory results prepared for the National Park Service.  Both Linemaster Switch and Kent County make clear that an agency is simply not obligated to find, nor can it be faulted for failing to find, every arguably relevant document even in its own files.  Linemaster Switch, 938 F.2d at 1305 (refusing to "require EPA to comb all regional files for potentially relevant data"); Kent County, 963 F. 2d at 396 ("We do not think that it was the EPA's responsibility to find all documents discussing [the relevant issue] in any office of the EPA.").[7]  It goes without saying that the same principle holds true with respect to discovering documents in other federal agency files, or, as Plaintiffs argue here, finding laboratory results prepared for other federal agencies.

Rather, the process employed in making listing determinations, i.e., requesting comments from all interested parties, including other federal agencies, ensures that FWS obtains all relevant information.  See, e.g., Doe v. Rumsfeld, 341 F. Supp. 2d 1, 12-13 ("Notice and comment gives interested parties an opportunity to participate through the submission of data, views and arguments. . . .  Notice and comment also ensures fairness to all parties and provides a well-developed record. . . .").  FWS surely is responsible for combing its own files, but it is incumbent upon those outside of FWS with relevant information to provide that information to FWS.  FWS sought information from other parties and federal agencies here, providing ample opportunity and time for all interested parties to provide comments.  See 68 Fed. Reg. at 46,991.  Thus, Plaintiffs' contention that FWS was "negligent" for failing to discover the laboratory results prepared for NPS borders on the absurd and

---

[7] Moreover, the factual situation justifying supplementation in Kent County is somewhat unique and far from analogous to the situation present in this case, where FWS thoroughly combed its own files and provided ample opportunity for parties to submit relevant information.  See 68 Fed. Reg. at 46,991 (discussing the process of soliciting information in order to complete a new status review for WCT).  This is not a case of FWS failing to search its own files and thus negligently failing to find a document.

is without merit.

Nor, as Plaintiffs' claim, is the report "relevant" because it "reveals that even the most protective land management in . . . Yellowstone National Park did not prevent the spread of hybridization."  Pls' Br. at 12.  It is well known that the waters of Yellowstone National Park, particularly those of the Madison and Gallatin River drainages in which WCT are native, were extensively stocked with nonnative trout beginning more than a century ago, as even the authors of the 2004 Yellowstone Report recognized..  See Exhibit 3 to Pls' Br. at 3 ("Rather, the extensive stocking and subsequent establishment of populations of non-native competing species . . . ( interbreeding rainbow trout and Yellowstone cutthroat trout) during the first half of the twentieth century have led to a serious reduction in the park's resident [WCT]."); AR I-260 at 7947, 8113, 8114 (documenting the practice of stocking nonnative trout in Yellowstone).   It is also well documented that this established stocking practice in Yellowstone did not and has not occurred in the other wilderness, roadless, and national park areas inhabited by WCT today.  AR II-119 at 2674.[9]

Thus, contrary to Plaintiffs' suggestion, Yellowstone National Park is not illustrative of other federal lands and is thus not relevant in that regard.   However, whether a document is relevant or not is immaterial and does not justify supplementation – the pertinent inquiry is whether the document was "before the agency" and considered by the agency in reaching its decision. See Fund for Animals, 245 F. Supp. 2d at 57 n. 7 (interpreting the phrase, "before the agency," "so broadly as to encompass any potentially relevant document existing within the agency or in the hands of a third party would render judicial review meaningless").

In sum, the 2004 Yellowstone Report was not before FWS when it made its decision; thus, this

---

[9] The record thus reveals that FWS fully considered the current status of WCT in Yellowstone National Park, including the threats facing the subspecies in Yellowstone.  See also 68 Fed. Reg. at 46,998-999 (data relating to WCT in Yellowstone was included in the extant database for WCT, which is detailed in the extensive report of Shephard et al. 2003 (AR II-119) and summarized in FWS' reconsidered finding).

Court should not, as advocated by Plaintiffs, create a new record in which to review FWS' reconsidered finding. <u>EDF v. Costle</u>, 657 F.2d at 284 ("The focal point for judicial review should be the administrative record already in existence, not some new record completed initially in the reviewing court." (citing <u>Camp v. Pitts</u>, 411 U.S. 138, 142 (1973)).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' request to supplement the record. If this Court decides to consider Plaintiffs' post-decisional materials, then Federal Defendants respectfully request the opportunity to introduce their own post-decisional studies and materials which directly address and refute the information, views, and criticisms provided in Plaintiffs' extra-record materials.[9]


Dated: January 23, 2006          Respectfully Submitted,

                                 SUE ELLEN WOOLDRIDGE, Asst. Attorney General
                                 JEAN E. WILLIAMS, Section Chief
                                 LISA L. RUSSELL, Asst. Section Chief


                                 _____/s/ Michael R. Eitel_____
                                 MICHAEL R. EITEL,
                                 Trial Attorney (SBN 22889 (Neb.))
                                 U.S. Department of Justice
                                 Environment & Natural Resources Division
                                 Wildlife & Marine Resources Section
                                 Ben Franklin Station, P.O. Box 7369
                                 Washington, DC 20044-7369
                                 Phone: (202) 305-0339/ Fax: (202) 305-0275
                                 Email: Michael.Eitel@usdoj.gov

                                 Attorneys for Federal Defendants

---

[9]  If the Court does not rule on the motions to supplement the record, then Defendants reserve opportunity to produce rebuttal materials as appropriate and necessary during briefing on cross-motions for summary judgment.