UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN WILDLANDS, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> GALE NORTON, in her official capacity as Secretary, U.S. Department of the Interior, et al., <br><br> Defendants. | ) <br> ) <br> ) Civil No.: 05-cv-1043 (EGS) <br> ) <br> ) PLAINTIFFS' OPPOSITION TO FEDERAL <br> ) DEFENDANTS' STATEMENT OF FACTS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Pursuant to Local Civil Rules 7.1(h) and 56.1, Plaintiffs American Wildlands, et al., hereby set forth their response to Federal Defendants' Statement of Material Facts as to which they contend there is no genuine issue. However, as set forth in Plaintiffs' own Statement of Material Facts, this case does not turn on the proof of any material fact because review of the challenged agency decision under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, is based on the administrative record. See American Bioscience v. Thompson, 269 F.3d 1077, 1083-84 (D.C. Cir. 2001) (explaining that the "entire [APA] case on review is a question of law") (internal quotations omitted). Nevertheless, to ensure compliance with the local rules, Plaintiffs respond to the numbered paragraphs in Federal Defendants' Statement of Material Facts as follows:

1. Plaintiffs admit the facts set forth in this paragraph.

2. Plaintiffs admit the facts set forth in this paragraph.

3. Plaintiffs admit the facts set forth in this paragraph.

4. Plaintiffs admit the facts set forth in this paragraph.

5. Plaintiffs admit the facts set forth in this paragraph.

6.        Plaintiffs admit the facts set forth in this paragraph.

7.        Plaintiffs admit that FWS issued a determination that listing is "not warranted" for WCT under the Endangered Species Act ("ESA") on August 7, 2003, and that Plaintiffs filed the instant lawsuit challenging the determination on May 23, 2005. However, FWS has no assurance that the U.S. Fish and Wildlife Service ("FWS") reviewed and considered all available information.

8.        Plaintiffs dispute that FWS provided a scientifically-based conclusion regarding inclusion of hybridized populations and populations of unknown genetic status in the WCT population for listing. The 2003 listing determination hinged on a newly created presumption that hybrids conforming to the "scientific taxonomic description of WCT" will "express the behavioral, ecological, and life-history characteristics of WCT native to the geographic areas where those populations occur." Reconsidered Finding for an Amended Petition To List the Westslope Cutthroat Trout as Threatened Throughout Its Range, 68 Fed. Reg. 46,989, 46,995 (Aug. 7, 2003). In defense of this presumption, FWS asserted that fish meeting the physical description of WCT are likely to be no more than 20% hybridized, and that this "limited presence in WCT of genetic material from other fish species" does not represent a threat. Id. at 46,994, 47,006. However, there is no scientific data to support either of these key assumptions.

First, with regard to the 20% threshhod, the available peer-reviewed scientific literature regarding efforts "to identify hybridized and non-hybridized populations using a variety of [physical] traits" reveal that "identification of hybridized populations of WCT on the basis of morphological analysis is not reliable." AR II-260 at 6928-29.[1] Based on the existing data, the

---

[1] "AR" as used herein refers to the Administrative Record filed by federal defendants. Citations are to Volume number, document number, and page number. For example, AR II-260 at 6928-29 refers to AR Part II, Document 260 at bate-stamped page numbers 6928-29.

only reliable genetic threshold for detecting hybridization is when a population has more than 50% foreign genes. See id. at 6928. As acknowledged by Dr. Don Campton, who co-authored the listing determination's policy regarding the value of hybrids, "[i]ntrogressed populations of WCT will be morphologically indistinguishable from non-introgressed populations if the amount of admixture … is less than 20-25%" and that "levels of admixture greater than 50% will be detected morphologically (i.e. in the field) because fish in those populations will not conform physically (phenotypically) to the scientific description of WCT." AR II-251 at 6799. However, "it is unclear … the extent to which 25-50% genetic admixture … will be detectable in natural populations of WCT based on morphological criteria, field observations, and the scientific description of WCT." Id. In other words, there is no data indicating a threshold at which point hybridization becomes visually detectable before a population is more than 50% hyrbidized — i.e. until foreign genes predominate over WCT genes. See, e.g. 68 Fed. Reg. at 46,993-944 (failing to cite any data indicating an intermediate threshold between 21% and 51% hybridization).

Second, FWS failed to cite to any scientific data supporting the proposition that populations with up to 20% foreign genes share all of the same "behavioral, ecological, and life-history characteristics of WCT." Id. at 46,994. Indeed, data submitted to FWS during the status review revealed that hybrids are likely behaving very differently than WCT in Montana's Flathead River system. See Letter from Fred Allendorf and Paul Spruell to Lynn Kaeding at 2-3 (November 30, 2003) ("Allendorf Letter") (attached as Exhibit 1 to Plaintiffs' Motion For Leave To Supplement The Administrative Record); AR II-92 at 2249, 2251, 2266; AR II-258 at 6896, 6907; AR II-91 at 2209-10; AR II-77 at 1350. While WCT tend to stay within localized areas, evolving adaptations to specific environmental conditions, hybrids are ranging more widely,

quickly colonizing unfamiliar habitat in Montana's Flathead River basin.  Compare AR II-258 at 6904-5, 6907 with AR II-92 at 2249, 2250-51, 2266-67, 2270; see also Allendorf Letter ("Native WCT populations demonstrate strong genetic differentiation over even short geographical distances; this indicates very little natural gene flow among native populations of WCT … . The rapid spread of introgression, however, indicates that there is a high rate of gene flow and dispersal from hybridized populations.") (internal citations omitted).  Thus, it appears that WCT are not only behaving differently than WCT, they are dispersing at rates that affirmatively threaten the WCT subspecies.

     Finally, the best available data indicates that hybrid look-alikes are not equivalent to WCT because hybridization, even at low levels, may result in the loss of local adaptations that are needed to secure the WCT's prospects for long-term persistence.  See AR II-260 at 6933, 6936; AR II-258 at 6896, 6907-9; AR II-35 at 921; AR II-64 at 1182-3, 1196-97; AR II-92 at 2251.  In contrast, there is no available data indicating that hybridization has a benign impact on the WCT's odds for long-term persistence.  For this reason too, FWS' policy for inclusion of hybrids in the WCT populations for listing is not scientifically-based.

     9.     Plaintiffs concur with this paragraph's description of FWS' listing determination, although they dispute the substance of the determination itself for the reasons set forth in the paragraph above.  Plaintiffs further wish to clarify that the hybrid policy also allows individuals and populations with more than 20% foreign genes to be classified as WCT.  See 68 Fed. Reg. at 46,995.

     10.     Plaintiffs concur with this paragraph's description of FWS' listing determination.

     11.     Plaintiffs dispute that FWS reasonably determined that the threat of hybridization does not warrant listing for all of the reasons set forth in Paragraph 8.

5

12.     Plaintiffs concur with this paragraph's description of FWS' listing determination.

Respectfully submitted this 3rd day of May, 2006,

/s/ Abigail M. Dillen
Douglas L. Honnold (D.C. Bar # 468323)
Earthjustice
209 South Willson Avenue
Bozeman, MT  59715
(406) 586-9699

*Counsel for Plaintiffs*