UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN WILDLANDS, et al., | )<br>)<br>) |
| Plaintiffs, | ) Civil No.: 05-cv-1043 (EGS)<br>) |
| vs. | ) PLAINTIFFS' REPLY IN SUPPORT OF<br>) MOTION FOR<br>) SUMMARY JUDGMENT<br>) |
| GALE NORTON, in her official capacity as Secretary, U.S. Department of the Interior, et al., | )<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

Federal defendants attempt to confuse the issues before this Court by insisting that "this case is about FWS' taxonomic classification and identification of WCT." Federal Defendants' Points And Authorities In Opposition To Plaintiffs' Motion For Summary Judgment ("Fed. Opp.") at 2.[1] Thus, they contend that "[t]his case is not about how hybridization might threaten the taxon." Id. But of course, the threat posed by hybridization is exactly what this case is about. Plaintiffs are not seeking to change "the science of taxonomically classifying species" Id. at 11. Plaintiffs are seeking to obtain a reasoned assessment of the WCT's prospects for survival given widespread interbreeding with introduced rainbow and Yellowstone cutthroat trout and their hybrid descendants.

During the remand process previously ordered by this Court, FWS elected to address the threat posed by hybridization by developing a "hybrids policy" that purports to distinguish viable WCT from hybridized fish that represent a threat to the WCT subspecies. See Reconsidered Finding for an Amended Petition To List the Westslope Cutthroat Trout as Threatened

---

[1] "FWS" as uses herein refers to the U.S. Fish and Wildlife Service.

Throughout Its Range, 68 Fed. Reg. 46,989, 46,991-96 (Aug. 7, 2003) ("The Value of Hybrid Westslope Cutthroat Trout In Listing Determinations").  Under this newly announced policy, fish meeting the agency's undisclosed taxonomic definition of WCT are classified as viable WCT that do not represent a threat to the subspecies.  See id. at 46,994 ("[W]e do not consider populations or individual fish conforming morphologically to the scientific taxonomic description of WCT to be a hybridization threat to the WCT subspecies.").  Based on the widespread distribution of these fish meeting the taxonomic definition of WCT, FWS concluded that listing is "not warranted" for WCT.  Id. at 47,006.  Thus, FWS used the "hybrids policy" not only to determine "which fish are part of the WCT subspecies taxon," but also to assess the scope of the threat posed by hybridization.  Fed. Op. at 2.

Because the "hybrids policy" fails to account for substantially hybridized fish as a threat to WCT, the application of this policy led to an arbitrary listing determination that is indefensible on the basis of the best available science.  Federal defendants cannot shore up this legal violation by arguing that FWS' identification of the WCT subspecies was consistent with conventional principles of taxonomy.  The science of taxonomy provides no support for the agency's presumption that hybrid fish meeting the physical description of WCT will be only slightly hybridized, much less equivalent to WCT in terms of behavior, ecology, and life-history characteristics.

**I.    FWS FAILS TO OFFER A REASONED, SCIENTIFCALLY-BASED DEFENSE OF ITS HYBRIDS POLICY**

The challenged listing determination rests on two key assumptions: (1) hybridized fish classified as WCT under the "hybrids policy" will have only a "limited presence … of genetic material from other fish species," 68 Fed. Reg. 47,006; and (2) such fish will "express the behavioral, ecological, and life-history characteristics of WCT native to the geographic areas

where those populations occur." Id. at 46,995.  Because federal defendants have failed to show that either one of these assumptions is defensible in light of the best available scientific data, the challenged listing decision cannot stand.[2]

### A. Federal Defendants Do Not Dispute That Hybridized Fish Meeting The Taxonomic Definition May Be Substantially Hybridized

In their opening brief, Federal Defendants emphasized that FWS treats only "slightly" hybridized fish as viable WCT under the "hybrids policy."  Federal Defendants' Memorandum Of Points And Authorities In Support Of Their Motion For Summary Judgment ("Fed. Mem.") at 19, 21, 22, 27, 28, 29, 35.  Indeed, the stated logic behind the listing determination falls apart if substantially hybridized fish may be classified as WCT under the "hybrids policy."  FWS reasoned as follows:

> "[W]e do not consider populations and individual fish conforming to the scientific taxonomic description of WCT to be a hybridization threat to the WCT subspecies.  Although such individuals may have genes from another taxon at low frequency, we are not aware of information to suggest that such individuals express behavioral, ecological, or life-history characteristics differently than do WCT native to the particular geographic area.  Without such changes, we expect the frequency of genes from the other taxon to remain low.  Therefore, we do not consider such populations as contributing to the threat of hybridization to the WCT subspecies."

68 Fed. Reg. at 46,994 (emphasis added).  In short, FWS presumed that fish classified as WCT under the "hybrids policy" would have foreign genes at "low" frequencies, and that this would

---

[2] While the government seeks to characterize this case as a "battle of the experts" that the agency is entitled to win, FWS' listing determination is arbitrary on its own terms.  Thus, it is unnecessary to consider the views of any non-agency scientists to conclude that a remand to the agency is necessary.  However, for all of the reasons set forth in Plaintiff's Opposition to Federal Defendants' Cross Motion For Summary Judgment ("Opp.") at 13-17, the agency's decision to ignore the recommendations of leading experts such as Dr. Fred Allendorf and Dr. Robb Leary further confirms that FWS' "not warranted" finding for WCT was contrary to the best available science.

keep hybridization levels low.  On this basis, the agency determined that listing is not warranted for WCT based on the distribution of fish meeting the taxonomic description of WCT.

Now, however, defendants concede that fish classified taxonomically as WCT may be more than "slightly" hybridized, deriving <u>more</u> than 20% of their genes from another species. <u>See</u> Fed. Opp. at 21 (stating that "FWS simply did not establish a threshold at which every population above that threshold would not conform morphologically to WCT").[3]  Indeed, defendants do not dispute that the only known threshold for distinguishing between WCT and hybrids based on physical or "taxonomic" traits is over <u>50%</u> hybridization.  <u>See</u> 68 Fed. Reg. at 46,994.[4]  This is hardly consistent with FWS' assertion that fish classified as WCT will have a "low frequency" or "limited presence" of foreign genetic material.  <u>Id.</u> at 46,994, 47,006.

Since fish meeting the taxonomic description of WCT may be substantially hybridized, the rationale for FWS' "not warranted" finding fails on its own terms.  For this reason alone, FWS' decision is arbitrary and capricious in violation of the Administrative Procedure Act, 5 U.S.C. § 706.  <u>See</u> <u>Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29,

---

[3] Federal defendants insist that FWS "simply did not make th[e] finding" that fish fitting the taxonomic description of WCT will have "no more than 20% genes derived from a foreign species." Fed. Opp. at 21 (internal quotations omitted).  However, the listing determination expressly states that "WCT may have a genetic ancestry derived by <u>as much as</u> 20 percent" from other species.  68 Fed. Reg. at 46,994.

[4] In a footnote, the government offers the post-hoc rationale that Weigel et al. 2000, one of several articles cited in FWS' discussion of the "hybrids policy," was "misrepresented" by Dr. Fred Allendorf and does not support the contention that "a hybridized population has to contain at least 50% admixture from RT [rainbow trout] to be identified reliably in the field." Fed. Opp. at 24 n.6.  However, FWS never expressed any such reservation when it made its listing determination.  <u>See</u> 68 Fed. Reg. at 46,994.  Moreover, in the comment referenced by the government, the authors of the "hybrids policy" state only that "Allendorf et al. <u>may</u> have misrepresented Weigel et al. (2002)." Defs' Ex. C at 1 (emphasis added).  In any case, other studies have demonstrated that hybridization is not detectable before fish are more than 50% hybridized, <u>see</u> AR II-260 at 6928, and the government does not argue that the findings presented in Weigel et al. 2000 establish any new threshold for detection of hyrbidization.

4

43 (1983) (explaining that a decision is arbitrary and capricious when the agency has "offered an explanation for its decision that runs counter to the evidence before the agency").

### B. Federal Defendants Fail To Justify The Presumption That Hybrids Meeting The Taxonomic Description Of WCT Do Not Threaten The Subspecies

Federal defendants also fail to provide a legitimate defense of the presumption that hybrids meeting the taxonomic description of WCT will share the same behavioral, ecological, and life-history traits expressed by locally-adapted WCT populations. In the absence of any scientific data supporting this presumption, defendants' sole argument is that FWS "reasonably found that there was no evidence" to the contrary. See Fed. Opp. at 13. However, as previously set forth in Plaintiffs' briefing, several published papers warn that hybridization among WCT threatens the loss of important local adaptations that may be needed to survive periodic events such as droughts, floods, forest fires, and disease epidemics. See Plaintiffs' Memorandum In Support of Motion For Summary Judgment ("Mem.") at 6, 11, 22; Plaintiffs' Memorandum In Opposition To Federal Defendants' Cross-Motion For Summary Judgment ("Opp.") at 14-15. See id. Moreover, a recent study of hybridization in Montana's Flathead River system suggests that hybrids are straying at faster rates than WCT, i.e. behaving differently than WCT. See AR II-92 at 2266; see also id. at 2249.

In an effort to dismiss this evidence, the government quotes from Plaintiffs' summary judgment brief, which stated that hybridization "may disrupt important long-term adaptations; that only genetically nonintrogressed WCT are likely to possess the local adaptations that are important for long-term persistence; and that introgressed WCT may not function as WCT." Fed. Opp. at 13 (emphasis in original) (quoting Mem. at 22); see also id. at 16 (highlighting Dr. Allendorf's acknowledgement that "all we have is circumstantial evidence of fitness effects" and arguing that the data presented in the Hitt thesis does not provide definitive "clear evidence" that

5

hybrids behave differently than WCT).  Yet uncertainty does not give FWS free reign to disregard well-recognized risks posed by hybridization. "Judicial and administrative interpretations of the ESA have consistently construed the [Endangered Species Act's] 'best available data" standard as requiring far less than 'conclusive evidence.'"  Defenders of Wildlife v. Babbitt, 958 F. Supp. 670, 680 (D.D.C. 1997).  As the courts have repeatedly emphasized, "[b]y requiring the listing of species based on the 'best available data,' Congress intended to give 'the benefit of the doubt to the species.'"  Id. (quoting Conner v. Burford, 848 F.2d 1441, 1454 (9th Cir.1988)); see also Greenpeace v. Nat'l Marine Fisheries Serv., 55 F. Supp. 2d 1248 (W.D. Wash 1999) (same); Sierra Club v. Marsh, 816 F.2d 1376, 1383 (9th Cir. 1987) (explaining that "Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities, thereby adopting a policy which it described as institutionalized caution") (internal quotations and citations omitted).

     FWS defied the precautionary principle enshrined in the Endangered Species Act ("ESA") when it discounted "the scientific information presently available" on the negative implications of losing WCT genes through hybridization. Defenders of Wildlife v. Babbitt, 958 F. Supp. at 670 (citing Roosevelt Campobello Int'l Park v. EPA, 684 F.2d 1041, 1054-55 (1st Cir. 1982).  The purely speculative assumption that hybrids will have the same long-term fitness as WCT so long as they look the same as WCT amounts to nothing more than a gamble on the WCT's future.  This violates the ESA's requirement that WCT receive the benefit of the doubt in the face of scientific uncertainty.  See Center For Biological Diversity v. Bureau of Land Mgm't., 422 F. Supp. 1115, 1134 n.15 (N.D. Cal. 2006) ("[T]o allow the Service to make a critical assumption when the scientific data is unclear or simply not available would eviscerate

Congress' intent to give the benefit of the doubt to the species.") (internal quotations and citations omitted).

## II.   PRINCIPLES OF TAXONOMY DO NOT JUSTIFY FWS' LISTING DETERMINATION

Instead of addressing the legal violations set forth above, federal defendants seek to defend FWS' inclusion of hybridized fish in the WCT subspecies taxon.  See Fed. Opp. at 3-15. Thus, they suggest that the "only question before this Court is whether FWS properly identified which fish are part of the WCT subspecies taxon."  Fed. Opp. at 2.  However, this is not a case about the taxonomic description of WCT. [5]  The question before this Court is not whether FWS properly included hybridized WCT as members of the subspecies, but rather, whether FWS reasonably assessed the status of the subspecies in light of widespread hybridization that represents an acknowledged threat.  See 68 Fed. Reg. at 47,006.  Accordingly, even if it were true that "FWS' scientists, peer reviewers, and the scientific studies in the administrative record all indicate that the taxonomic classification of WCT is scientifically sound," Fed. Opp. at 11, this would not solve the problem that FWS failed to undertake a principled assessment of the threat posed by hybridization.

---

[5] The government complains that plaintiffs "misrepresent and diminish the science of taxonomically classifying species" in contending that FWS' criteria for classifying WCT are "based on how a WCT 'looks.'"  Fed. Opp. at 20.  However, taxonomic classification is inherently based on physical or "morphological" traits, i.e. looks.  In this regard, it is worth noting that FWS has never specified what physical traits establish conformity with the taxonomic definition of WCT.  See Letter from Fred Allendorf and Paul Spruell to Lynn Kaeding (November 30, 2003) (Ex. 1 to Plaintiffs' Motion For Leave To Supplement The Administrative Record) ("Allendorf Letter") at 1-2; Defs' Ex. D at 1-2.  While the challenged listing determination sets forth a detailed protocol for molecular genetic testing of WCT, it fails to identify acceptable morphological methods for taxonomic classification of WCT.  See 68 Fed. Reg. at 46,996.  More specifically, there is no requirement that fish be "fully examined morphologically" in keeping with the elaborate procedures described by the government.  Fed. Opp. at 20.

Plaintiffs do not dispute that hybridized WCT might properly be considered members of the subspecies. Contrary to the government's arguments, plaintiffs do not take the position that "the mere existence of a foreign gene per se excludes the fish from inclusion in the WCT subspecies taxon." Id. at 1. However, if hybrids are included in the WCT population considered for listing, FWS must consider how their inclusion impacts the population's overall status on a case-by-case basis. See, e.g. 68 Fed. Reg. at 47,004-5 (discussing varying degrees of hybridization and associated impacts across the WCT's range). The approach taken by the states in their "status report" is illustrative. See AR II-119. As explained by the government, that report "made the pivotal distinction between identifying members of the WCT subspecies and the separate question of assessing the genetic status of those populations." Fed. Opp. at 9 (citing AR II-119 at 2684 ("All waters that supported WCT … regardless of the introgression, were included; however, the genetic status of each stream segment was classified."); id. at 2687-88, 2697-2709 (noting that WCT populations may be genetically introgressed, but that distinctions between populations of WCT are made based on genetic status and management classifications).

In contrast, FWS did not make any such "pivotal distinction" in its own status review. As the government correctly states, the ESA required FWS first to identify the population to be considered for listing and then to assess whether threats to that population warrant listing. See Fed. Opp. at 2. However, FWS "blur[red] the lines between these two steps of the listing process," id. at 3, by announcing that any fish fitting the taxonomic criteria for membership in the WCT subspecies is not a threat to the subspecies. See 68 Fed. Reg. at 69,994 (specifying the "value" of hybrid WCT in listing determinations). Thus, FWS treated all fish classified as WCT as viable members of the subspecies regardless of their genetic status. This approach cannot be reconciled with the recognition that hybridization is a threat. See American Wildlands v.

8

Norton, 193 F. Supp. 2d 244, 258 (D.D.C. 2002) (invalidating FWS' previous "not warranted" finding for WCT because "the agency wholly fail[ed] to reconcile its recognition of hybridization as a threat to WCT's viability with its inclusion of hybrid stock in the population assessed for listing"). Moreover, it cannot be reconciled either with the approach previously adopted by FWS in its status review of the Rio Grande Cutthroat Trout, in which the agency relied solely on the secure status of pure cutthroat populations, see Notice of candidate status review, 67 Fed. Reg. 39,936 (June 11, 2002), or with the alternative approach taken by the states in the status report that FWS now endorses. Compare with American Wildlands v. Norton, 193 F. Supp. 2d at 255 (explaining that "[t]o the extent that the [State of Montana's] Montana plan [regarding hybridization] represents expertise, upon which FWS relied in making its listing determination, it is troubling that FWS apparently ignored Montana's reasoning and example regarding the need for differentiation between levels of hybridization in WCT stock").

In short, there is no scientific basis to conclude that hybridization is only a threat when it becomes physically detectable through morphological methods. Accordingly, taxonomic classification is irrelevant to assessing the threat posed by hybridization. All of the government's arguments regarding the propriety of including hybrids in the WCT subspecies are therefore unavailing. Because FWS has once again failed to draw a principled distinction between hybridization that is benign and hybridization that represents a threat, this Court must once again invalidate FWS' "not warranted" finding for WCT.

## CONCLUSION

For all the foregoing reasons, and all of the reasons stated in Plaintiffs' previously filed briefs, American Wildlands, et al. respectfully request that this Court grant their motion for summary judgment and deny Federal Defendants' cross motion for summary judgment.

Respectfully submitted this 2nd of June 2005,

/s/ Abigail M. Dillen
Douglas L. Honnold (D.C. Bar # 468323)
Earthjustice
209 South Willson Avenue
Bozeman, MT  59715
(406) 586-9699

*Counsel for Plaintiffs*